## WALSER et al. v. CALLEY.
### No. 3430.

Court of Civil Appeals of Texas. Amarillo.
June 18, 1930.

Rehearing Denied Sept. 10, 1930.

Wilson, Randal & Kilpatrick, of Lubbock, for appellants.

Vickers & Campbell and Levens, McWhorter & Howard, all of Lubbock, for appellee.

RANDOLPH, J.

This suit was filed by appellants against appellee to recover a real estate brokers commission. From a judgment in favor of the defendant, the plaintiffs have appealed.

S. L. Walser and J. A. Bray, a brokerage firm, entered into a contract with defendant to sell or exchange a section of land belonging to the defendant. The plaintiffs alleged substantially in their petition that the defendant promised and agreed to pay the plaintiffs a commission of $500 to make a deal for the exchange of property with Dr. W. F. Perkins on the condition outlined to the plaintiffs by the defendant, which will be discussed hereafter.

The plaintiffs alleged that they procured a written contract, which was accepted and signed by the defendant and the said Perkins, and thereafter the defendant Calley refused to perform this contract and purchase same. That having performed their duty as such brokers, they are entitled to their commission, for which they sue.

The appellants alleged error on the part of the trial court in the overruling of their motion for rehearing upon the following ground: (1) That the defendant, Calley, by written agreement, accepted by these plaintiffs, contracted and agreed with the plaintiffs to pay them a commission of $500 to make a deal with Dr. Perkins for the exchange of defendant's property for property of said Perkins; (2) that the plaintiffs procured a written contract of exchange of property between defendant and Dr. Perkins on the terms fixed by the defendant; and (3) that the defendant wrongfully failed and refused to comply with such contract of exchange, although the purchaser stood ready and willing to make the deal indicated by the contract of exchange and that the plaintiffs were insisting on the consummation of the exchange contract.

The case was tried before a jury and was submitted to them by the court upon the following special issues:

"Special Issue No. One. Did T. C. Calley agree to pay the plaintiffs a commission of $500.00 to procure the contract in question with Dr. Perkins and to assist in the deal?" This the jury answered: "No."

"Defendants Special Issue No. One. Did the plaintiffs prior to the execution of the Calley-Perkins contract, represent to the defendant that forty acres of the 480 acre Hood County tract had been rented for the year 1926? Answer Yes or No." This the jury answered: "Yes."

"If you answer the above issue 'Yes', then answer: was such representation false? Answer Yes or No." This the jury answered: "Yes."

"2. Was such representation relied upon by the defendant T. C. Calley? Answer Yes or No." This the jury answered: "Yes."

"Plaintiff's requested special issue No. 2: Did T. C. Calley offer to perform the contract with Dr. Perkins? Answer yes or no." This the jury answered: "Yes."

The contract sued on was evidenced, in addition to the testimony of the plaintiffs, by a letter written by the defendant, Calley, which is as follows:

"Shallowater, Texas. 1—22—26.
"Walser & Bray Land Exchange,
"Hereford, Texas.
"Gentlemen:
"In answer to your letter and our conversation in regard to trade with Dr. Perkins, I have just talked to party I was telling you about, he owns land and property there at Tolar, Tex. He informs me that $5,000.00 would be a fair price for both of his places. I would consider paying off first note that is past due now, leaving the $8,000.00 and

$1500.00 second lien notes. For him to assume about $9500.00 one of them due Oct., 1926, for $500.00 Oct. 1927 for $1,000.00 and will pay you $500.00 commission to make the deal that way.

"Your very truly,　　T. O. Calley."

█ Taken in connection with the contract for exchange between Calley and Perkins, which bears date the same day as this letter and which was later signed by both parties, there was no ambiguity. The court should have construed this letter as a contract binding the defendant to pay the plaintiffs the $500 upon their complying with the stipulations of the letter and employment of agency, and should not have submitted to the jury the issue as to whether or not the defendant had agreed to pay the plaintiffs a $500 commission.　Spectralite, Inc., v. Segall (Tex. Civ. App.) 25 S.W.(2d) 927.

Among the questions remaining to be solved are: Did the plaintiffs earn this commission by finding a party who was ready, able, and willing to exchange his property with the defendant upon the terms stipulated by the defendant?

The contract of sale between the defendant and Dr. Perkins is in words as follows:

"The State of Texas,
"County of Deaf Smith.

"This exchange agreement made and entered into this the 22nd day of January, 1926, by and between T. C. Calley, party of the first part, and W. F. Perkins, party of the second part.

"Witness, that, for and in consideration of the covenants herein named to be performed by second party, the first party does hereby grant, bargain and sell to the second party all of Section No. 71, Block M-7, in Castro and Deaf Smith Counties, Texas, and does agree to convey the same to second party by good and sufficient warranty deed, clear of encumbrances except $8000.00 payable to Federal Farm Loan Bank, and one note for $1,-000.00 and one note for $500.00 payable to C. C. McNurney, and the 1926 tax, all of which is to be assumed by second party, together with the interest thereon from and after the date of the deed conveying same; also first party is to furnish second party with an abstract of title to said lands showing good and merchantable title to be conveyed.

"For and in consideration of the covenants herein named to be performed by first party the second party does hereby grant, bargain and sell to first party a 100 acre farm about five miles south of Tolar, in Hood County, Texas; a 480 acre farm about seven miles south from Tolar, in Hood County, Texas; and an undivided one-half interest in a stone store building and the lands therewith and also an undivided one-half interest in and to the lot adjoining said building, the building on said lot having burned and the walls are still standing thereon, said building and lot being in the town of Tolar, Hood County, Texas, and said properties being all the real estate to be transferred by said Perkins in Hood County, Texas; and does agree to convey all of said properties to first party by a good and sufficient warranty deed clear of encumbrances except the 1926 taxes and the sum of 97½ cents per acre payable to the State against said 480 acre farm, which is to be assumed by first party; also second party is to furnish abstracts of titles to all of said properties showing good and merchantable title to be conveyed.

"As additional consideration said Calley is to execute and deliver to said Perkins his vendor's lien note one for $500.00 due on or before one year after date, bearing 8 per cent interest, payable to Perkins, one for $1,000.00 due on or before two years after date, secured by vendor's lien on the said 100 acre Hood County farm and to have the usual provisions found in vendor's lien notes.

"Possession to be exchanged as soon as this contract can be consummated and rents to go to the respective party from the date of the exchange of deeds.

"Witness our hands this the 22nd day of Jan. 1926.

⸰　"T. C. Calley
"W. F. Perkins."

█ The defendant Calley's plea that Dr. Perkins' land was misrepresented to him and that he relied upon the representations made by the agents, the plaintiffs, is not substantiated by the evidence. While the defendant claims to have relied upon certain representations, the evidence clearly shows that he did not do so, but that he made an independent investigation for himself and thereupon appeared satisfied with the value and character of the property he was trading for. In addition to the statement contained in the above-quoted letter, the defendant testified as follows:

"I talked to E. K. Hufstedler in Lubbock before I signed that sale contract. He had been down in that country. I did not depend on him altogether for information concerning this property as to value, I went ahead and traded after I talked to him, I signed that contract after I talked to him. I asked him about this property at Tolar, Texas. He had lived down there. I don't know whether I accepted his representations with reference to it, or not, I went ahead and signed that contract after I had talked to him. I had known Mr. Hufstedler for sometime and I knew he came from a part of that country. I think I told Walser & Bray that I had talked to Hufstedler and that this land was worth Five Thousand and that was about all. It is true that I traded for that property on the basis stated in the contract.

"The reason April 7th would not do as well as April 1st to close this trade is be-

cause I changed my mind after Bray told me what he did about Dr. Perkins investigating my property. I might have gotten a better trade proposition up there from this other fellow. I wouldn't say that I did. I still own the property up there, it is still in my name. I don't know that I supposed I had a better contract with the other fellow and that I would call this trade off with Dr. Perkins. I don't suppose I did get a better proposition. It was after the 1st of April that Bray and I had a conversation with reference to this deal and he told me about the reason Dr. Perkins had not sent the abstracts was because he was investigating it and that it had been misrepresented to him and I don't know whether that was on April 2nd or April 20th. I told Mr. Bray at Hereford, before I wrote this letter of April 20th, that I would not take this property, and I don't remember whether that was on the 15th of April, or not. I wrote him this letter in answer to the letter he wrote me. I do not know that these abstracts were in the post office up here when I wrote this letter on the 20th of April. They could have been in the post office without me knowing it, but I don't think so.

"I don't remember whether this contract came back from Dr. Perkins to me about ten or twelve days after it was signed by me or not. I don't remember when it came back, it came back to Mr. Bray and he sent me a copy of it is the way I remember it. I don't know whether it would take ten or twelve days to make that round or not, ought to make it quicker than that. It was over two months from 1st of February until the 7th of April. I decided the day I talked to Mr. Bray in Hereford that the time had been too long and that was after the first day of April. I don't remember the date, but when he told me what he did I told him we would just call the deal off. I do not have anything at all to show me when I was at Hereford.

"I guess this letter, wherein I agreed to pay Five Hundred dollars to those fellows, was written after I had this telephone conversation with Mr. Walser. I talked to Mr. Bray in his office and told him I would give him Five Hundred Dollars. I don't remember whether this letter sets out our agreement that we had over the telephone, or not; we had a conversation and I wrote him this letter stating the same thing that our agreement was in his office. That letter, that has been introduced about the commission, is what I told him before personally in his office. I wrote to Dr. Perkins when I sent him that contract and that was on the 23rd of January and I don't remember writing to him any more. Dr. Perkins came to my place in July after that."

 It appears from the record that the defendant had never complied with his contract to furnish the purchaser with an abstract of title to his land. Nowhere in the contract is time the essence of the contract, yet defendant, while neglecting to furnish Perkins with an abstract, decided that he had not been furnished with an abstract by Perkins in time and proceeded to make a contract with another party involving his land in controversy here. Under the facts of this record, it appears that the defendant proceeded to determine his own rights for himself, also that he had made an independent investigation for himself and thereupon signed the contract; that he never furnished the other party with his abstract; and that he had made what he does not deny was a better contract with another party before announcing his repudiation of the contract between himself and Perkins. Gray v. Williams (Tex. Civ. App.) 290 S. W. 844, 845.

It also appears that the purchaser, Dr. Perkins, offered to go on with the trade and tendered his abstracts to the defendant through the mail some time in April, and that the defendant refused to take them out of the mail but had the package sent him marked "refused" by the post office.

We therefore reverse the judgment of the trial court and remand the case for a new trial.